IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **TRISTAN BONN,** | ) | **CASE NO. 8:08CV493** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| **CITY OF OMAHA, a political subdivision, MIKE FAHEY, in his official capacity as Mayor of Omaha, and PAUL LANDOW, in his official capacity as the Mayor's Chief of Staff,** | ) ) ) ) ) ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' motion for summary judgment (Filing No. 47) and motion in limine (Filing No. 50). The Court has considered the briefs and evidence filed with respect to both motions. For the reasons stated below, Defendants' motion will be granted in part and denied in part. Plaintiff's first and third causes of action will be dismissed with prejudice. The Court will decline jurisdiction over Plaintiff's remaining claims and remand them to the District Court of Douglas County, Nebraska.

## FACTS

Defendant City of Omaha hired Tristan Bonn as the Independent Public Safety Auditor ("Safety Auditor") on or about June 4, 2001. (Filing No. 1, Complaint ¶ 2.) Section 25-9 of the Omaha Municipal Code established the Safety Auditor position funded by the Omaha City Council. (Filing No. 56-1.) The ordinance created an independent audit and review process for citizen complaints against Omaha firefighters and police officers to increase public confidence in the internal investigations process. (*Id.*) The Safety Auditor was in the "classified service" for purposes of hiring, firing, discipline and any other

personnel actions. (*Id.*) An employee in "classified service" can only be terminated for cause. (Filing No. 56-2, Deposition of Paul Landow ("Landow Dep." 15:24-16:4.) Shortly after Bonn was hired, the Omaha City Council terminated funding for the position. (Filing No. 49-3, Defendants' Answers to Interrogatories, No. 8.) Defendant Mayor Mike Fahey secured private funding for the position, however, for Bonn to continue as Safety Auditor through December 2005. (*Id.*) Bonn received positive performance reviews throughout her time as Safety Auditor. (Filing Nos. 56-9 through 56-13.)

After private funds were exhausted, Mayor Fahey offered to make Bonn a member of his staff. (Filing No. 49-4, Deposition of Tristan Bonn ("Bonn Dep."), 5:19-6:1, Filing No. 55, at 10, ¶ 4.) Prior to becoming a member of the mayoral staff, Bonn met with Defendant Paul Landow, the Mayor's Chief of Staff; Wendy Hahn, a Deputy City Attorney; and Cecil Hicks, the Human Resources Director. (*Id.* 11:19-12:4.) Bonn expressed concern about losing her civil service protection, fearing that she might be subject to negative employment action if she issued a report contrary to the Mayor's opinion. (*Id.* 13:23-14:19.) During the meeting, Hahn told Bonn that the Mayor liked her work and wouldn't fire her. (*Id.* 14:6-8.) Landow also reminded Bonn that the Mayor's office had disagreed with her reports in the past but did not take negative employment action. (*Id.* 14:9-17.) After moving to the Mayor's office, Bonn requested an executive order from the Mayor outlining her job description and stating that Bonn could not be fired except for cause. (*Id.* 26:4-25.) The Mayor's office refused to provide a written job description and Bonn had no written employment contract with the Mayor's office. (*Id.* 26:22-25; Filing No. 49-2, Plaintiff's Answer to Interrogatories, No. 3.) However, Landow represented to Bonn that in the Mayor's office she would continue the work she performed as the Safety Auditor by

2

evaluating and reviewing police procedures. (Filing No. 56-2, Landow Dep. 11:4-6.) Bonn was aware that a position with the Mayor's office was at-will, meaning she would lose her classified service protection. (Filing No. 49-4, Bonn Dep. 13:23-14:4.) In the Mayor's office, Bonn's hours and pay were reduced, and she no longer had an administrative staff. (Filing No. 49-4, Bonn Dep. 15:1-15.)

As a mayoral employee from March 2006 through June 2006, Bonn wrote numerous memoranda and e-mails to the Mayor and his staff concerning public complaints against the Omaha Police Department ("OPD"). (Filing Nos. 56-21 through 56-23, 56-25 through 56-28). Bonn requested input regarding her memoranda and e-mails, but no member of the Mayoral staff responded directly. (Filing No. 56-19, ¶¶ 11, 13, 15, 23-24; Filing No. 56-40, Defendants' Supplemental Answers to Interrogatories, Nos. 2, 7.) In August of 2006, Bonn notified Landow that she would be filing a negative report on OPD's traffic stop practices. (Filing No. 56-3, Landow Dep. 46:15-47:6; Filing No. 56-8, Landow Dep. Ex. 10, e-mail dated August 9, 2006.) In the late afternoon of October 19, 2006, Bonn sent her report entitled *Anatomy of Traffic Stops* (the "Report") as an attachment to an e-mail to Mayor Fahey, Landow, and OPD Chief Thomas Warren, identifying the report and asking for comments. (Filing No. 49-12, e-mail dated October 19, 2006.) On October 20, 2006, Bonn released her Report. (Filing No. 46-3, Landow Dep. 53:18-54:3.) The Report was prepared as a function of Bonn's official duties with the City of Omaha. (Filing No. 49-2, Plaintiff's Answer to Interrogatories, No. 13.) The Report indicated that discriminatory OPD practices adversely affected recruitment and employment of minority candidates for OPD positions. (*See generally* Filing No. 56-16.) Specifically, the Report stated that minorities in North and South Omaha felt alienated from a predominantly white, male police force that

3

included several non-Omaha residents. (*Id*., at 34.) The Report claimed that a by-product of alienation in minority communities was that young members of those communities did not seek to become OPD officers. (*Id*.) The Report also stated that minority applicants to the OPD may have been eliminated due to misdemeanor records that resulted from inappropriate traffic stops. (*Id*.)

After the Report's issuance, Bonn spoke with media outlets including KFAB radio and the Omaha World-Herald which contacted her for comment on the Report. (Filing No. 49-4, Bonn Deposition 21:1-22:7.) On October 30, 2006, Mayor Fahey sent a letter to Bonn indicating that she had been terminated from employment in his office. (Filing No. 56-31.) The letter indicated that, in the Mayor's office, Bonn was an at-will employee without classified status and cited other changes from her previous position as the Safety Auditor. (*Id*.)

On January 24, 2007, Bonn filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and the United States Equal Employment Opportunity Commission ("EEOC"). (Filing No. 56-34.) The NEOC determined that sufficient evidence supported a reasonable-cause finding that discrimination occurred. (Filing No. 56-35.) Following this determination, the NEOC and EEOC, through the United States Department of Justice, issued right-to-sue letters. (Filing Nos. 56-36, -37.) Bonn then filed the present action in the District Court of Douglas County, Nebraska, and Defendants timely removed the case to this Court. (Filing No.1.)

Bonn alleges four causes of action. First, Bonn claims that, under Title VII of the Civil Rights Act of 1964, she was terminated in retaliation for issuing a report and speaking out against discriminatory activities in the OPD that had an adverse impact on minority

recruitment. (Filing No. 1, Complaint, ¶¶ 37-39.) Second, Bonn alleges retaliation under the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1114(1) & (3), based on her opposition to discriminatory employment practices of the OPD. (*Id.*, ¶¶ 40-41.) Third, Bonn claims her report and statements about OPD practices were protected speech under the First Amendment, and that Defendants Fahey and Landow violated her constitutional rights by terminating her. (*Id.*, ¶¶ 42-44.) Fourth, Bonn alleges that Defendants wrongfully discharged her in violation of an agreement to act as an independent auditor. (*Id.*, ¶¶ 45-47.) Bonn requests: front and back pay; past and future fringe benefits; damages for pain, suffering, humiliation, and emotional distress; costs and attorney fees; and pre- and post-judgment interest. Defendants have moved the Court for summary judgment on each of Bonn's claims. (Filing No. 47.)

## STANDARD OF REVIEW

In the context of a summary judgment motion, the Court's function is to consider the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor, and to determine whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In response to the proponent's showing, the opponent's burden is

to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis omitted)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*.

"Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Arnold v. Nursing and Rehabilitation Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 845-46 (8th Cir. 2006) (internal quotation marks omitted) (quoting *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000)). That is, no separate summary judgment standard exists for discrimination cases, and "such cases are not immune from summary judgment." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006) (citing *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)). Rather, in the context of employment discrimination, summary judgment "'remains useful as a pretrial tool to determine whether or not any case . . . merits a trial.'" *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005) (quoting *Berg*, 169 F.3d at 1144).

## DISCUSSION

### I. First Claim - Title VII

A plaintiff proves Title VII discrimination with either direct or indirect evidence. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). If a plaintiff lacks direct evidence, the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006). Bonn does not present any direct evidence for her Title

VII retaliation claim, and instead argues that her claim should go forward under the *McDonnell Douglas* analysis. Under *McDonnell Douglas*, Bonn must first establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3 by showing: "(1) [she] engaged in protected activity; (2) [she] suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action." *Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008) (quoting *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005)). If Bonn meets this burden, Defendants must "articulate a legitimate non-retaliatory reason for the termination." *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007) (citing *Green v. Franklin Nat'l Bank*, 459 F.3d 903, 914 (8th Cir. 2006)). If Defendants articulate a non-retaliatory reason, Bonn must then show that the stated reason was a pretext for discrimination. *Id.*

Section 2000e-3(a) of Title 42 of the United States Code prevents an employer from retaliating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter."[1] To satisfy the first element of the *McDonnell Douglas* analysis under the opposition clause, "a plaintiff employee need not establish that the conduct [s]he opposed was in fact prohibited under Title VII." *Brannum v. Missouri Dept. of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008) (quoting *Bakhtiari*, 507 F.3d at 1137). Rather, a plaintiff need only prove that she "had a good faith, reasonable belief that the

---

[1] In addition to the above quoted provision, § 2000e-3(a) also prevents an employer from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). These two clauses are typically described respectively as the "opposition clause" and the "participation clause." *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 741 (8th Cir. 2005). Bonn has not argued that Defendants violated the participation clause and instead proceeds under the opposition clause.

7

underlying challenged conduct violated [Title VII]."  *Id.* (internal quotations omitted). "Conduct is not actionable under Title VII if no reasonable person could have believed the incident violated Title VII's standard."  *Barker v. Missouri Dep't of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008) (quoting *Clark County Sch. Dist., v. Breeden*, 532 U.S. 268, 271 (2001)). The Eighth Circuit has held that a belief is unreasonable where no evidence shows that an employer's policy is a pretext for excluding certain people from employment.  *Knott v. Missouri Pac. R. Co.*, 527 F.2d 1249, 1252 (8th Cir. 1975).  Generally, a plaintiff cannot meet the first element of the *McDonnell Douglas* analysis if the plaintiff did not engage in activity protected by Title VII.  *Bakhtiari*, 507 F.3d at 1137 (citing *Artis v. Francis Howell Band Booter Ass'n, Inc.*, 161 F.3d 1178, 1183 (8th Cir. 1998)).

A complaint about an "entity's action outside the ambit of an employment practice is unprotected by Title VII."  *Id.* (quoting *Artis*, 161 F.3d at 1183 (internal quotations omitted)).  In *Bakhtiari*, the Eighth Circuit upheld summary judgment for an employer university where the plaintiff complained about the university's allegedly discriminatory action toward him in investigating him for inappropriate conduct.  *Id.*  The court in *Bakhtiari* determined that Title VII did not protect a plaintiff's complaints where they were directed at the defendant's practices as a university and not as an employer.  *Id.  See also Artis*, 161 F.3d at 1183-84 (holding that an employee's internal complaints to school administrators about the school's treatment of students was not protected by the retaliation provisions of Title VII); *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 101-02 (8th Cir. 1995) (reversing judgment for plaintiff, because the plaintiff's act of opposing a desegregation plan was not a protected act under the retaliation provision of Title VII).

"Title VII is not a 'bad acts' statute."  *Evans*, 65 F.3d at 101 (quoting *Crowley v. Prince George's County*, 890 F.2d 683, 687 (4th Cir. 1989)).

While the Eighth Circuit has not directly addressed cases similar to this one, other circuits have examined Title VII retaliation in the context of an employee's complaints about alleged discriminatory conduct of police officers toward non-employees.  In *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125 (2d Cir. 1999), the Second Circuit found that a plaintiff failed to show he engaged in a protected activity where he reported racial slurs and causeless traffic stops of minority citizens by police officers.  *Id.* at 134-35.  The *Wimmer* court reasoned that the plaintiff offered evidence only as to the police department's discriminatory conduct toward the public, and presented no evidence as to the department's discrimination regarding the terms and conditions of employment within the department.  *Id.* at 135.  Wimmer could not reasonably have believed he was opposing an employment practice, because the evidence did not address discrimination in an employment practice.  *Id.* The Second Circuit concluded that the plaintiff's "claim of retaliation is not cognizable under Title VII because [the plaintiff's] opposition was not directed at an unlawful *employment practice* of his employer."  *Id.*

Similarly, in *Crowley v. Prince George's County*, 890 F.2d 683 (4th Cir. 1989), the Fourth Circuit reversed a jury verdict in favor of an employer, finding that the retaliation provisions of Title VII did not extend to plaintiffs who alleged retaliation after investigating claims of racial harassment by police officers.  *Id.* at 687.  The Fourth Circuit stated:

> To recognize [plaintiff's] claim would be to authorize retaliation actions under Title VII for anyone whose job entails the investigation of any claim of discrimination against his or her employer, without regard to whether the claimed discrimination relates to a practice of employment. While Congress may decide to extend the statute's coverage to persons who bring any

9

> discriminatory practice of an employer to light, such a step lies beyond the province of the courts. To find in Title VII protection for whistle-blowers on each and every instance of discrimination on the part of an employer is more than we think the plain language of its provisions will support.

*Id.  See also Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997); *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) ("[N]ot every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual.").

The case at hand differs from the above cases only in that Bonn alleges that she believed OPD's practices resulted in indirect employment discrimination.  This difference is insufficient to establish that Bonn was engaged in a protected activity because Bonn's belief was unreasonable under the standards of Title VII.  Through accounts of alleged improper traffic stops and other conduct, Bonn concluded that certain members of the OPD acted with discrimination toward segments of the public.  She also inferred that improper stops may have resulted in criminal records for potential applicants that excluded them from employment with OPD.  Bonn did not allege that OPD specifically failed or refused to hire a candidate based on race or nationality.  Nor did she report that OPD discriminated with respect to compensation, employment terms, conditions, or privileges because of an applicant's race, color, or national origin.  Further, Bonn did not report that OPD limited, segregated, or classified applicants or employees in a way that may have deprived a person of employment opportunities because of race, color, or national origin.  *See* 42 U.S.C. § 2000e-2.[2]  Rather, Bonn's statements of opposition were limited to the secondary

---

[2]Section 2000e-2(a) delineates the employment practices prohibited by Title VII. It reads:
    (a) Employer practices

effects of general discrimination alleged in the Report. The Report itself states, a "by-product of harsh and poor policing tactics in communities of color is that the young members of those communities do not select policing as a career." (Filing No. 56-16, at 27.) While such actions may indeed deter minority youth from seeking employment with OPD, they are not employment practices under Title VII.[3] The Report also suggested that improper police work may have removed potential applicants from the pool due to misdemeanor records resulting from improper police tactics. *Id*. This assertion is too far removed from OPD employment policy and too speculative to support a reasonable belief that the OPD actions in question were prohibited employment practices. Nowhere does the record indicate that OPD's difficulty recruiting minorities was the result of an employment policy or practice as listed in Title VII. Bonn's complaints go to OPD's alleged policing practices and not its employment practices. While the alleged discriminatory

---

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

[3]While the Report alleges that OPD conduct caused a disparate impact on minority employment within the department, it fails to meet the burden set out in § 2000e-2(k). That subsection permits a claim for disparate impact only as a result of certain employment practices. § 2000e-2(k)(1). While the Report indicates a disparate impact, the disparate impact is not a result of an employment practice, but of general discrimination in police conduct. Thus, the Report does not oppose an employment practice prohibited by Title VII.

11

practices Bonn reported would be cause for concern, Title VII only protects against retaliation for opposing discriminatory *employment* practices. The acts Bonn reported simply are not employment practices under by Title VII. Therefore, Bonn has failed to establish the first element of a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a).

Because Bonn did not establish a prima facie case, the burden does not shift to Defendants to articulate a nondiscriminatory reason for her termination, and the Court does not reach her pretext arguments. *See Barker*, 513 F.3d at 835 n.4.; *Hunt v. Neb. Pub. Power Dist.*, 282 F3d 1021, 1029 (8th Cir. 2002). Defendants are entitled to judgment as a matter of law.

## II.     Third Claim - First Amendment

Bonn's Third Claim against Defendants is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Pickering v. Board of Ed.*, 391 U.S. 563, 568 (1968). *Pickering* sets forth the analytical framework used to evaluate a public employee's claim based on an unlawful infringement of First Amendment rights. The first inquiry is whether the employee spoke as a citizen on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983). This is a question of law for the Court. *Id.* at 148 n.7. If the answer is negative, then the employee has no First Amendment cause

of action based on the employer's reaction to the speech. *Id.* at 146. Only if the answer to the first inquiry is yes, will the analysis continue. *McGee v. Pub. Water Supply*, 471 F.3d 918, 920 n.2 (8th Cir. 2006). In this case, the Court finds that Bonn cannot clear the first hurdle, and Defendants are entitled to summary judgment as a matter of law.[4]

In considering whether a public employee is speaking as a citizen on a matter of public concern, the Supreme Court provided some guidance in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The Court stated, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively. *Id.* at 419. In *Garcetti*, the Court found the controlling fact to be that the public employee's statements were made pursuant to his job duties, and therefore the Court found that the statements were not protected speech under the First Amendment. *Id.* at 420-21. The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Id.* at 421.

The Eighth Circuit has stated, "to trigger constitutional protection, an employee must 'speak as a citizen addressing matters of public concern.'" *Lindsey v. City of Orrick, Missouri*, 491 F.3d 892, 897 (8th Cir. 2007) (quoting *Pickering*, 391 U.S. at 568). In

---

[4]Bonn is not suing Defendants Fahey and Landow in their personal capacities. As Defendants point out in their brief, "[a] suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 2932 (2008) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). "The real party in interest in an official-capacity suit is the governmental entity and not the named official.'" *Id.* (quoting *Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983)). Thus, the analysis is the same for all Defendants.

*Lindsey*, the Eighth Circuit recognized that the Supreme Court's holding in *Garcetti* excluded from First Amendment protection public employees making statements in their official capacities. *Id.* "After *Garcetti*, a public employee does not speak as a citizen if he speaks pursuant to his job duties." *McGee v. Pub. Water Supply, Dist. # 2*, 471 F.3d 918, 919 (8th Cir. 2006) (holding a public water supply district manager's complaints about environmental compliance, although involving matters of public concern, were made pursuant to his official duties to ensure regulatory compliance and thus were not made as a citizen).

Bonn claims she exercised her First Amendment rights by speaking out against the OPD in the Report and the news media. Bonn defeats her own claim, however, by admitting that the Report was prepared as a function of her official duties as the Public Safety Auditor. (Filing No. 49-2, Plaintiff's Answer to Interrogatory, No. 13). Bonn also admits that the media contacted her specifically with regard to her Report. (Filing No. 49-4, Bonn Dep. 21:1-7.) Although general policy in Mayor Fahey's office prevented employees from speaking to the media without authorization, it is undisputed that Bonn was excluded from that rule and could speak to the press. (Filing No. 55 p. 13, Undisputed Facts ¶ 20; Landow Dep. 53:18-54:3.) The media did not contact Bonn for her views of the Report as a private citizen, but as the Public Safety Auditor and author of the Report. It is clear that Bonn's statements to the media were within her official duties as Public Safety Auditor. Thus, because Bonn's statements in the Report and to the media were within her official capacity, she cannot clear the first hurdle of the *Pickering* analysis, and her comments are not protected by the First Amendment.

Bonn contends that her statements to the media were protected because she did not solicit media attention. While Bonn cites no Eighth Circuit authority for this proposition, she cites several cases from other jurisdictions. In *Miller v. City of Canton*, 319 F. App'x 411, 417 (6th Cir. 2009), the Sixth Circuit determined that the president of a police union was not acting within official duties when he issued a press release stating that the chief discriminated against black officers, because the union president was not doing what he was paid to do. This case is distinguishable because Bonn clearly was doing what she was paid to do when she issued the Report and spoke to media. The other cases Bonn cites addressed the issue of whether the speech at issue was of public concern. *Cioffi v. Averill Park Cent. Dist. Board of Educ.*, 444 F.3d 158, 161, 164 (2d Cir. 2006) (high school football coach's press conference for the purpose of stating the school district was retaliating against him was a matter of public concern); *Hughes v. Region VII Agency on Aging*, 542 F.3d 169, 182 (2d Cir. 2008) (public employee's comments to reporters was protected speech when the speech involved matters of public concern). These cases did not deal with the issue of whether a public employee's speech was made in the course of official duties. The Court need not address the issue of whether Bonn's statements were of public concern because she was not speaking as a citizen. *Lindsey*, 491 F.3d at 897 ("to trigger constitutional protection, an employee must 'speak as a citizen addressing matters of public concern'") (quoting *Pickering*, 391 U.S. at 568). Because Bonn's statements were not protected under the First Amendment, Defendants are entitled to judgment on this claim as a matter of law.

### III.     Claims II and IV - State Law Claims

Defendants removed this action from Nebraska state court because this Court had original jurisdiction over Bonn's First Amendment and Title VII claims. 28 U.S.C. §§ 1331 & 1441(b)-(c). The Court now grants summary judgment in favor of Defendants on each of these federal claims. A district court, in its discretion, may decline jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(2). The district court has further discretion to dismiss or remand a plaintiff's state law claims when the federal claims have been eliminated. *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 644 (8th Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court."). The factors a district court considers in determining whether to remand a case to state court include the statute of limitations and the values of convenience, economy, comity, and fairness. *Cohill*, 484 U.S. at 351, 352. The Supreme Court also noted that where all federal claims are eliminated before trial, these factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7.

### A.     Nebraska Fair Employment Practices Act

Bonn claims retaliation under the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. § 48-1114(1) & (3). The NFEPA prohibition on retaliation reads in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his or her employees or applicants for employment, . . . because he or she (1) has opposed any practice made an unlawful employment practice by the Nebraska Fair Employment Practice Act, (2) has made a charge, testified, assisted, or participated in any manner in an

16

> investigation, proceeding, or hearing under the act, or (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state.

Neb. Rev Stat. § 48-1114 (2004).

Unlike Title VII, the NFEPA retaliation statute precludes retaliation against an employee who has opposed or refused to participate in any practice or action that is prohibited under federal or Nebraska state law. § 48-1114(3). Bonn has alleged a violation under § 48-1114(3), but did not brief the issue. The Court will decline jurisdiction over Bonn's NFEPA claim and remand it to the Nebraska state court.

**B.** <u>**Wrongful Discharge Claim**</u>

Bonn's remaining claim is for wrongful discharge, alleging breach of contract. Breach of contract for wrongful termination is governed by state law. *See Skinner v. Maritz, Inc.*, 253 F.3d 337, 341 (8th Cir. 2001) (treating wrongful termination as a state law breach of contract claim). Bonn claims Defendants violated a valid agreement based on statements made to her before she moved to the Mayor's office. She further argues that she gave consideration for the contract by forfeiting her civil service protection. In support of this argument, Bonn states that she could have retained civil service protection, because she was entitled to transfer to a different department rather than become an at-will employee in the Mayor's office. These arguments present multiple issues of Nebraska employment, municipal, and contract law. In the interest of economy, convenience, comity, and fairness, the Court will decline jurisdiction over Bonn's wrongful-termination claim and will remand it to the Nebraska state court.

## CONCLUSION

For the reasons discussed, the Defendants' motion for summary judgment is granted in part; the Plaintiff's first and third causes of action based on Title VII and the First Amendment to the United States Constitution are dismissed; the Plaintiff's state-law claims are remanded to state court; and the Defendants' motion in limine is denied as moot.

IT IS ORDERED:

1. Defendants' motion for summary judgment (Filing No. 47) is granted as follows:

    a. Plaintiff Tristan Bonn's first and third causes of action, raising claims under Title VII and the First Amendment to the United States Constitution, are dismissed with prejudice;

    b. The Court declines jurisdiction over Plaintiff Tristan Bonn's second and fourth causes of action, raising state law claims, and those causes of action are remanded to the District Court of Douglas County, Nebraska; and

2. Defendants' motion in limine (Filing No. 50) is denied as moot.

DATED this 22nd day of September, 2009.

                                                   BY THE COURT:

                                                   s/Laurie Smith Camp
                                                   United States District Judge